UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ESBIN & ALTER, LLP,

          *Plaintiff,*

  -- against --

PAUL ZAPPIER and ADVANCED TRADE
SETTLEMENT, LLC,

          *Defendants.*
-----------------------------------------------------------------x

Docket No.

08 cv 00313 (SCR)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
# SHOW CAUSE MOTION FOR EXPEDITED DISCOVERY

### Preliminary Statement

Plaintiff Esbin & Alter, LLP ("E&A") respectfully submits this memorandum of law in support of its show-cause motion, pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, for an order granting expedited discovery from defendants Paul Zappier ("Zappier") and his business enterprise Advanced Trade Settlement, LLC ("ATS") (collectively "defendants"). E&A will promptly seek a preliminary injunction to halt defendants' ongoing copyright infringement, breach of trust and confidence, theft of trade secrets, and unfair competition. The expedited discovery sought by this motion is needed to secure that injunction.

In the absence of preliminary relief, E&A will continue to suffer significant and irreparable harm. E&A, a law firm specializing in the secondary trade of syndicated loans and privately placed securities, employed Zappier as a consultant to design a computer program that would automate many of the firm's most proprietary business operations, practices, and work flows. After more than three years of employment, during which time Zappier pledged to protect

E&A's confidential information from public disclosure and misuse, Zappier showed his true intentions by stealing the firm's intellectual property, forming his own competing business *while* still working for E&A, and using that business to undermine E&A's practice.

E&A's request for expedited discovery falls squarely within the contemplation of Rule 26(d). It is supported by 'good cause' – indeed, it is supported by compelling facts – and it is reasonable in scope. It should therefore be granted.

## FACTUAL BACKGROUND[1]

### A. Zappier's Consulting Work for E&A

In January 2004, E&A retained Zappier as a computer programming consultant. E&A hired Zappier to implement and modify a preexisting computer program that would provide E&A with a law office database and management application. In addition to completing other tasks, this software was intended to provide an effective and efficient way for E&A to track distressed debt trades, organize trade documents, generate status reports, and bill clients. E&A and Zappier referred to this software as the "MATTERS" program. E&A employed Zappier through August 31, 2007.

In the more than three and one half years that Zappier worked for E&A, he worked closely with the firm's partners, associates, paralegals, and administrative staff, communicating regularly with them. Indeed, Zappier and E&A developed a relationship of substantial trust. He became a familiar presence in the office and was included in firm meetings and planning sessions.

---

[1] Unless otherwise noted, the recitation of facts is drawn from the declaration of Ilyssa Alter, dated December 28, 2007 ("Ilyssa Alter Dec."), which E&A has submitted in support of this motion.

During the course of their relationship, E&A disclosed some of its most confidential procedures, documents, and general know-how to Zappier, revealing E&A's unique business practices for distressed debt trading. For example, E&A provided Zappier with highly confidential and proprietary work-flow charts, which outlined and described – on a step by step basis – the firm's methods of operation. This information included confidential procedures, techniques, and business expertise that E&A and its attorneys had developed over many years of practice. And for the sole purpose of developing MATTERS, E&A also disclosed to Zappier proprietary documents that the firm used to execute business trades.

The actual design process for MATTERS was really an ongoing dialogue between Zappier and E&A personnel. Firm employees would identify specific applications that would best advance the efficient operation of E&A's distressed debt practice, Zappier would program the requested applications, and firm employees would then critique his work and make constructive suggestions and further requests. In short, the entirety of Zappier's work was solely responsive to E&A's targeted requests and input.

**B. Zappier's Breach of Trust and Theft of E&A's Intellectual Property**

In July 2007 – while still employed by E&A – Zappier formed Advanced Trade Settlement ("ATS"). Among other commercial services, ATS sells software (the "ATS Software") that performs many of the same, unique tasks as the MATTERS program performs. For example, the ATS Software provides the user with: (1) a list of trades and their status according to client; (2) real-time trade status; (3) trade ticket information; (4) a trade combination feature; (5) trade confirmation; and (6) automated document generation. Zappier had developed all of these program functions during his employment by E&A and in close consultation with E&A personnel.

On October 18, 2007, Zappier attended the Loan Syndication and Trading Association Conference ("LSTA Conference") in New York City. The LSTA Conference is a trade show and conference for businesses involved in the secondary loan industry. Representatives from numerous securities, financial products, broker-dealer and law firms, banks, and hedge funds attend the LSTA Conference – many of which are either clients or competitors of E&A.

At the LSTA Conference, Zappier operated a vendor's trade booth to promote ATS and its business services. While there, Zappier distributed marketing materials for the ATS Software, which he advertised to conference attendees as a computer program that, among other things, automatically tracked distress debt trades and generated related trade documentation. In addition, Zappier actually demonstrated the ATS Software to interested onlookers and potential customers.

Several E&A personnel also attended the LSTA Conference and saw the ATS booth. Two E&A staff members watched Zappier's ATS Software demonstration, and they were struck by the program's substantial similarity to the MATTERS program.

E&A has since learned that, while Zappier was still employed by the firm, he solicited one of the firm's most significant clients to buy the ATS Software – which would potentially reduce the client's need for E&A's services. Furthermore, another major financial institution that Zappier solicited to buy the ATS Software told E&A that it believed that E&A was somehow involved in Zappier's business.

On October 29, 2007, E&A – through counsel – notified Zappier that his development and sale of the ATS Software violates several provisions of his employment agreement with E&A. *See* Complaint Exh. B. The firm demanded that Zappier and ATS immediately cease

their violations. On November 13, 2007, Zappier's counsel rejected E&A's demand. *See id.* Exh. C.

## ARGUMENT

**A. Governing Law**

Rule 26(d) of the Federal Rules of Civil Procedure governs a litigant's request for expedited discovery. Ordinarily, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). This rule may be superseded, however, "by order," *id.*, and "[r]equests for expedited discovery are typically appropriate in cases involving requests for a preliminary injunction." *Mitra v. State Bank of India*, No. 03 Civ. 6331 (DAB), 2005 WL 2143144, at *7 (S.D.N.Y. Sep. 6, 2005) (internal quotation marks omitted).

In this district, courts generally "apply one of two tests to determine whether . . . expedited discovery is appropriate." *Blackrock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *8 (S.D.N.Y. May 30, 2007). Under the test set forth in *Notoro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which was fashioned under the Federal Rules of Civil Procedure before Congress amended them in 2000, *see OMD Fidelity, Inc. v. Sirius Technologies, Inc.*, 239 F.R.D. 300, 303-04 (N.D.N.Y. 2006) (limiting *Notoro* to its particular facts and because it pre-dates the 2000 amendments to the discovery rules), a "party request[ing] expedited discovery must . . . satisfy a four-part test similar to the standard for a preliminary injunction," *Blackrock, Inc.*, 2007 WL 1573933, at *8.[2]

---

[2]   Under *Notoro*, in order to gain expedited discovery, a party must show: (a) irreparable injury; (b) some probability of success on the merits; (c) some connection between the expedited discovery and the avoidance of irreparable harm; and (d) that, absent expedited discovery, the movant will suffer greater harm than the opposing party will suffer as a result of expedited discovery. *See* 95 F.R.D. at 405.

5

But "[m]ore recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause.'" *Stern v. Crosby*, ___ F.R.D. ___, 2007 WL 3261522, at * 4 (S.D.N.Y. 2007) (citing *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)). This latter approach has "the better of the argument" because "the intention of [Rule 26(d)] was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test." *Ayyash*, 233 F.R.D. at 326. Indeed, as courts in this district have reasoned, "employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedited discovery in order to prepare for a preliminary injunction hearing." *Id.* at 326-27; *see also Stern*, ___ F.R.D. at ___, 2007 WL 3261522, at * 4 (holding that "the more flexible approach is better" than the *Notoro* test). Thus, "in deciding on a matter merely of regulating the timing of discovery, it makes sense to examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 327 (internal quotation marks omitted and emphasis in original).

In this case, E&A's request for expedited discovery should be granted under either test.

### B. Plaintiff's Reasonable Request for Expedited Discovery Is Supported By Good Cause

E&A's complaint alleges that defendants have infringed the MATTERS copyright, that Zappier has breached his contractual and common-law duties to protect the confidentiality of E&A's proprietary information, that defendants have misappropriated E&A's trade secrets, and that defendants are engaging in unfair competition. In fact, E&A's employees actually observed a demonstration of the ATS Software at the LSTA Convention, and have reviewed some of defendants' marketing materials for that software – all of which strongly indicate the ATS Software is substantially similar to the MATTERS program and that defendants have stolen

E&A's confidential computer program, information and business practices. *See* Ilyssa Alter Dec. ¶¶ 7-9; Declaration of Jennifer Cronin, dated December 28, 2007 ("Cronin Dec."), ¶¶ 3-7.

If all this were not egregious enough, Zappier actually tried to sell the ATS Software to one of E&A's largest clients *while he was still working for plaintiff*. *See* Ilyssa Alter Dec., ¶ 10. While still working for E&A, Zappier also marketed the ATS Software to another major bank, which had been a client of E&A and is a potential future firm account. *See id.*, ¶ 11.

This evidence of defendants' misconduct more than justifies expedited discovery. *See Ayyash*, 233 F.R.D. at 327 ("strong evidentiary showing of the substantiality of [plaintiff's] claims" provided "good cause for seeking expedited discovery"); *accord Stern*, ___ F.R.D. at ___, 2007 WL 3261522, at * 4-5 (evidence of attempted witness tampering established "good cause" for expedited discovery); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D.Cal. 2002) (conservation of judicial and litigant resources was good cause supporting expedited discovery). The bottom line is simple. Without the information currently sought, E&A's efforts to obtain a preliminary injunction, and thereby halt the ongoing irreparable injury being inflicted on its business by defendants' unlawful marketing and sale of the ATS Software, will be substantially delayed.[3]

In *OMG Fidelity* – a case also involving alleged misappropriation of trade secrets and unfair competition – the court reasoned that,

> particularly given that plaintiff contemplates a motion for a preliminary injunction, depending upon the results of its proposed discovery efforts, it is clear that plaintiff will potentially be unfairly prejudiced should I not permit discovery to go forward since it will not have an early opportunity to develop evidence for use in support of such motion.

---

[3]     These facts demonstrating the substantiality of E&A's claims, the ongoing irreparable harm suffered by the firm, the direct connection between the expedited discovery sought and the cessation of E&A's injury, and the balance of equities, clearly satisfy the *Notoro* standard as well.

239 F.R.D. at 305. Those are precisely the circumstances here, and for the same reasons this Court should likewise grant E&A's request for expedited discovery.

Furthermore, the extent of expedited discovery that E&A seeks is entirely reasonable. Usually, "the scope of expedited discovery is limited to requests that are more narrowly tailored to the time constraints under which both parties must proceed [and] to the specific issues that will have to be determined to at the preliminary injunction hearing." *Federal Express Corp. v. Federal Espresso, Inc.*, No. 97 Civ. 1219 (RSP), 1997 WL 736530, at *2 (N.D.N.Y. Nov. 24, 1997) (internal quotation marks omitted). Here, E&A's proposed interrogatories and document requests "are exceedingly pointed." *OMG Fidelity*, 239 F.R.D. at 305. They merely seek to identify crucial witnesses with knowledge of defendants' conduct and information necessary to establish a likelihood of success on the firm's injunctive claims for copyright infringement, breach of trust, trade secret misappropriation, and unfair competition. *See* Declaration of Daniel S. Alter, Esq., dated January 11, 2007, ¶ 4. In addition, the expedited discovery order that E&A proposes makes all depositions in anticipation of a preliminary injunction motion subject to the Court's approval. *See* Proposed Order to Show Cause. Thus, the burden involved in responding to these discovery demands would by no means be excessive or unwarranted, especially considering that ATS has only existed since July 2007, and is therefore likely to have only limited files and other materials.

\* \* \* \* \*

## CONCLUSION

For all these reasons, the Court should grant E&A's show-cause motion for expedited discovery.

Date:  January 11, 2008        Respectfully submitted,
       New York, New York

                 By: _____
                     DANIEL S. ALTER, ESQ. (DA-7158)
                     ALTER & ALTER, LLP
                     300 East 42nd Street, 10th Floor
                     New York, NY 10017
                     (212) 867-7777
                     *Attorneys for Plaintiff*