01/18/2008 09:23 FAX  914 390 4179        U.S. District Court         ⊠002/003

DANIEL S. ALTER, ESQ. (DA-7158)
ALTER & ALTER LLP
300 East 42nd Street, 10th Floor
New York, NY 10017                              **ORIGINAL**
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
ESBIN & ALTER, LLP,                             **08 CIV. 0313**

                    *Plaintiff,*
                                                Docket No. **JUDGE ROBINSON**
         -- against --

PAUL ZAPPIER and ADVANCED TRADE
SETTLEMENT, LLC,.                               

                    *Defendants.*

------------------------------------------------x

## ORDER TO SHOW CAUSE

Upon reading and filing the annexed summons and complaint, the declarations of

Daniel S. Alter, Esq., dated January 11, 2008, Ilyssa Alter, dated December 28, 2007, and

Jennifer Cronin, dated December 28, 2007, the exhibits annexed thereto, and the

supporting Memorandum of Law submitted herewith, and sufficient cause appearing

therefore;

LET defendants Paul Zappier and Advanced Trade Settlement, LLC or their

attorneys show cause before this Court, located at 300 Quarropas Street, Courtroom

621, White Plains, New York, on the 24 day of January, 2008 at 9:30 A.M. 4pm, or as

soon thereafter as counsel may be heard, why an Order pursuant to Rule 26(d) of the

Federal Rules of Civil Procedure should not be made and entered against defendants

directing defendants or their counsel to: (1) confer with plaintiff's counsel and submit,

within 10 days of entry of the Court's order directing expedited discovery, a stipulation

and proposed order governing the exchange of confidential information between the

parties; (2) provide sworn answers and documents in response to plaintiff's first set of interrogatories and document requests within 20 days of this Court's entry of an order directing expedited discovery; and (3) confer with plaintiff's counsel and submit, within 30 days of entry of the Court's order directing expedited discovery, a proposed scheduling order setting forth deposition dates for relevant witnesses and a briefing schedule for plaintiff's anticipated motion for a preliminary injunction.; and it is further

ORDERED, that service of a copies of this Order, together with the papers upon which this Order is based be served personally upon defendants at their residence and principal place of business, located at 11 Kings Drive, Middletown, New York 10941, which service shall be made on or before the _18th_ day of January 2008, and said service shall be deemed sufficient.

January _15_, 2008
White Plains, NY

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

2

# COMPLAINT

DANIEL S. ALTER, ESQ. (DA-7158)
ALTER & ALTER LLP
300 East 42nd Street, 10th Floor
New York, NY 10017
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ESBIN & ALTER, LLP,

                    Plaintiff,

    -- against --                                    Docket No.

PAUL ZAPPIER and ADVANCED TRADE              **JURY TRIAL DEMANDED**
SETTLEMENT, LLC,

                    Defendants.
----------------------------------------------------------------x

## COMPLAINT

Plaintiff Esbin & Alter, LLP ("E&A"), by and through its attorneys Alter & Alter LLP,
for its complaint alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.    E&A, a law firm specializing in the secondary trade of syndicated loans and
privately placed securities, brings this action against defendants Paul Zappier ("Zappier") and
Advanced Trade Settlement, LLC ("ATS") for copyright infringement, breach of contract,
breach of confidence and fiduciary duty, trade secret misappropriation, and unfair competition.
E&A hired Zappier to design a computer program that would simplify, automate, and make more
efficient the highly proprietary processes and practices employed by E&A in servicing its clients
in the specialized markets for distressed debt instruments and privately held securities. As a
condition of his employment, Zappier contractually promised not to disclose the confidential

information and trade secrets that E&A disclosed to him in the course of his programming. Zappier also promised not to use E&A's confidential and proprietary information, or his programming work for E&A, in any manner that competed with E&A for business. In addition, Zappier assigned to E&A his entire right, title, and interest in the program that he designed for the firm, including, but not limited to, the exclusive right to use the program, to reproduce the program, to prepare derivative works from the program, and to distribute the program.

    2.     Upon information and belief, Zappier has grossly violated E&A's trust, as well as his own statutory, contractual, and common-law obligations. Upon information and belief, he used the confidential information and proprietary materials furnished to him by E&A during the course of his work, as well as the very program that he designed with E&A's material input and guidance, to create and market a software product that directly competes with E&A's business (the "ATS Software"). Indeed, upon further information and belief, Zappier formed defendant ATS while he was still working for E&A, intending to use ATS to market and significantly profit from the intellectual property that he had wrongfully taken from the firm.

    3.     Zappier's unlawful actions have caused and will continue to cause severe and irreparable harm to E&A. Upon information and belief, Zappier and ATS have created the misimpression in the market for distressed debt and related services that the ATS Software was created, and is being distributed in cooperation with, E&A. Needless to say, the consumer confusion generated by Zappier and ATS in this small and highly specialized industry is tremendously injurious to the business good will enjoyed by E&A. Similarly, the continuing misappropriation and disclosure of E&A's software, proprietary information, and underlying trade secrets by Zappier and ATS constitutes an ongoing attack on the firm's success by offering

2

market consumers an alternative to E&A's services. Monetary damages are inadequate to remedy this continuous and egregious harm.

4.    E&A therefore seeks the intervention of this Court to stop defendants' unlawful acts and to remedy the injuries that they have already inflicted upon the firm.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the complaint pursuant to 28 U.S.C. §§ 1332, 1338, and 1367.

6.    Venue is proper in this district because E&A's principal place of business is in this district, and upon information and belief both Zappier's residence and ATS's principal place of business are in this district.

## THE PARTIES

7.    Plaintiff Esbin & Alter, LLP, is a limited liability partnership, duly organized under the laws of the State of New York. E&A's principal place of business is located at 497 South Main Street, New City, New York 10956.

8.    Defendant Paul Zappier is an individual who, upon information and belief, resides at 11 Kings Drive, Middletown, New York 10941.

9.    Upon information and belief, defendant Advanced Trade Settlement, LLC, is a limited liability company, duly organized under the laws of the State of New York. Upon further information and belief, ATS's principal place of business is located at 11 Kings Drive, Middletown, New York 10941.

## GENERAL ALLEGATIONS

10.    In January 2004, E&A retained Zappier as a computer programming consultant. E&A hired Zappier to implement and modify a preexisting computer program that would

3

provide E&A with a law office database and management application. In addition to managing other firm operations, this program was intended to provide an effective and efficient way for E&A to track distressed debt trades, organize trade documents, generate status reports, and bill clients. The program that Zappier designed for E&A is referred to in this complaint as the "MATTERS" program

11.     On August 15, 2007, E&A and Zappier executed an agreement, which, among other things, recognized, affirmed, and stated the terms and conditions of Zappier's employment. A true and correct copy of that agreement is annexed hereto as Exhibit A, and the contents thereof are incorporated in this complaint by reference.

12.     Zappier was employed by E&A through August 31, 2007. In the more than three and one half years that Zappier worked for E&A, he worked closely with the firm's partners, associates, and administrative/paralegal staff. In order for Zappier to design and incorporate the various functions that the firm needed MATTERS to complete, it was necessary for firm employees to communicate regularly with Zappier. Thus, the designing process for MATTERS was an extended dialogue between Zappier and E&A personnel. Firm employees would identify specific applications that would best advance the efficient operation of E&A's distressed debt practice, Zappier would program the requested applications, and firm employees would then critique his work and make constructive suggestions and further requests. Zappier's programming activities were thus solely responsive to E&A's targeted requests and input.

13.     In the course of this three-plus year dialogue, E&A disclosed some of its most confidential practices, procedures, documents, and general know-how to Zappier regarding the business of distressed debt trading. For example, E&A provided Zappier with highly confidential and proprietary work-flow charts, which outlined and described – on a step by step

4

basis – the firm's methods of operation. This information included confidential procedures and business expertise that had been developed by E&A and its attorneys over many years of practice.

14.    For the sole purpose of developing MATTERS, E&A also disclosed to Zappier proprietary documents used by the firm to execute business trades. A non-exclusive list of program applications that Zappier designed for E&A through this interactive process includes a billing system, an invoice creator, a trade tracking and status reporting function, attendance keeping, administrative functions including a document generation and management system, and the integration of MATTERS with the Microsoft® Outlook program.

15.    Over the course of Zappier's several years of employment, E&A developed a relationship of substantial trust with him. He became a familiar presence in the office and was included in firm meetings and planning sessions. Based on the level of trust that he enjoyed, E&A administrative/paralegal staff began responding to his direct requests for information without direction from E&A attorneys. Indeed, Zappier on several occasions asked and received from E&A staff copies of proprietary documents that were not directly related to his design work. Upon information and belief, Zappier specifically obtained these documents in order to assist his design of software that incorporated program elements from MATTERS and would that compete with E&A's business.

16.    Indeed, upon information and belief, Zappier formed ATS in July 2007 – while still employed by E&A – in anticipation of marketing software that incorporated program elements from MATTERS and that would compete with E&A's business.

17.    On October 18, 2007, Zappier attended the Loan Syndication and Trading Association Conference ("LSTA Conference") in New York City. The LSTA Conference is a

5

trade show and conference for businesses involved in the secondary loan industry.

Representatives from numerous securities, financial products, broker-dealer and law firms,

banks, and hedge funds attended the conference – many of which are either clients or

competitors of E&A.

18.    While at the LSTA Conference, Zappier had a vendor's trade booth that he used

to promote ATS and its business services. Zappier distributed to conference attendees marketing

materials for the ATS Software, which he advertised as a computer program that, *inter alia*,

automatically tracked distress debt trades and generated related trade documentation ("ATS

Software"). Zappier also provided demonstrations of the ATS Software to interested onlookers

and potential customers.

19.    Several E&A personnel also attended the LSTA Conference and saw the ATS

booth. Two E&A staff members watched Zappier's ATS Software demonstration.

20.    Upon information and belief, the ATS Software marketed by Zappier at the LSTA

Conference, and observed by E&A staff, is substantially similar to MATTERS in that, among

other things, the ATS Software provides the user with: (1) a list of trades and their status

according to client; (2) real-time trade status; (3) trade ticket information; (4) a trade

combination feature; (5) trade confirmation; and (6) automated document generation. These

substantially similar functions are not an exhaustive list of appropriated material.

21.    Upon information and belief, Zappier misappropriated E&A's trade secrets and

proprietary information, and incorporated them into the ATS Software.

22.    On October 29, 2007, an attorney representing E&A notified Zappier by letter

that, by developing and marketing the ATS Software, he had violated several provisions of his

employment agreement with E&A. The firm demanded that Zappier and ATS cease violating

6

the agreement immediately. A true and correct copy of the E&A's cease and desist letter, dated October 29, 2007, is annexed hereto as Exhibit B.

23.    On November 13, 2007, Zappier's counsel rejected E&A's demand. A true and correct copy of Zappier's response to E&A's demand, dated November 13, 2007, is annexed hereto as Exhibit C.

## CLAIM I

### (Copyright Infringement Against Zappier and ATS)

24.    Plaintiff repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

25.    Paragraph 2 of the agreement between E&A and Zappier, dated August 15, 2007 (annexed hereto as Exhibit A), "assigns[,] grants and conveys" to E&A the "exclusive right to use", the "exclusive right to reproduce," the "exclusive right to prepare derivative works," and the exclusive right to distribute copies of" MATTERS.

25.    In October, 2007, E&A applied to United States Copyright Office for a copyright to MATTERS.

26.    On October 29, 2007, the United States Copyright Office issued E&A a copyright for MATTERS, registration number TXu 1-570-137. A true and correct copy of the MATTERS's copyright certificate is annexed hereto as Exhibit D.

27.    Upon information and belief, the ATS Software incorporates literal and/or non-literal elements of the MATTERS program, including but not limited to source code, object code, program architecture and structure, constituent routines and sub-routines and/or user interfaces.

7

28.  . Upon information and belief, Zappier and ATS have incorporated these literal and/or non-literal elements of the MATTERS program into the ATS Software without permission from E&A and in violation of E&A's statutory rights under 17 U.S.C. § 101 *et seq.*

29.   Upon information and belief, Zappier and ATS are currently marketing the ATS Software to the public notwithstanding that the ATS Software infringes the MATTERS copyright and is causing E&A tremendous injury.

## CLAIM II

### (Breach of Contract Against Zappier)

30.   Plaintiff repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

31.   The agreement between E&A and Zappier, dated August 15, 2007 (annexed hereto as Exhibit A), contains several provisions that expressly protects the confidentiality and exclusive ownership of E&A's proprietary information.

32.   Paragraph 1 of the contract provides that "[f]or purposes of this agreement all improvements and additions of any kind developed and implemented specifically for the Firm after January 2004 are deemed to be part of [MATTERS] and the Parties intend that the Firm obtain, to the extent permitted by law, exclusive rights to and complete control of all trade secrets related to the firm's business and other similar rights in and to [MATTERS] and all immediate versions thereof."

33.   Paragraph 4 of the contract provides that Zappier "will not himself use the Firm's version of [MATTERS] for any purpose that is in business competition with Firm."

34.   Paragraph 9 of the contract provides that, with respect to information provided by E&A to Zappier that is designated as "confidential," Zappier "will not use such Confidential

8

Materials for his own purposes," and will "hold in confidence forever and in perpetuity all such Confidential Materials . . . even after the date of termination of employment," provided that the information is not in the public domain, in Zappier's possession prior to his employment by E&A, or is received from a third party that is authorized to distribute it.

35.    Zappier breached one, two, or all three of these promises by using information that he received from E&A in designing the ATS Software, which provides services that compete with the firm's business.

36.    E&A has suffered tremendous injury as a direct consequence of Zappier's breach of contract.

## CLAIM III

### (Breach of Confidence/Fiduciary Duty Against Zappier)

37.    Plaintiff repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

38.    During the course of Zappier's employment, E&A relied upon him tremendously to improve the firm's operations, and Zappier established personal relationships with E&A partners and staff members. E&A lawyers and paralegal staff invested substantial trust in him and his professed allegiance to the firm.

39.    In reliance upon that trust, E&A provided Zappier with access to highly proprietary information and disclosed confidential methods and practices to him that the firm did not even disclose to clients, much less reveal to the public.

40.    Zappier was aware that he enjoyed a position of trust within E&A, and he availed himself of that trust by requesting access to confidential and proprietary information, such as specific procedures and documents used by the firm in trading distressed debt for clients.

9

41.    Upon information and belief, Zappier abused and breached that trust by intentionally misappropriating E&A's confidential information and proprietary materials. More specifically, upon information and belief, Zappier faithlessly incorporated crucial and proprietary elements of the MATTERS program into the ATS Software – all to enrich himself.

42.    E&A has suffered tremendous injury as a direct consequence of Zappier's breach of trust and confidence.

## CLAIM IV

(Trade Secret Misappropriation Against Zappier and ATS)

43.    Plaintiff repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

44.    The information that E&A lawyers and paralegal staff provided to Zappier in working with him on the MATTERS program included highly confidential information regarding the practices and operations of E&A. For example, E&A provided Zappier with highly detailed flow charts that explained and described the tasks undertaken by E&A staff in completing financial trades for clients. E&A personnel also critiqued MATTERS as Zappier designed the program, giving Zappier invaluable direction into the efficient and competitive practices involved in distressed debt trading. Finally, E&A provided Zappier with its proprietary form documents that it uses in completing financial trades, so that they could be included in the MATTERS database and document generation system.

45.    E&A developed all of this highly proprietary information over many years of practice and by drawing upon the unique expertise of its staff. Such information is extremely valuable to E&A, and provides E&A with a substantial advantage over competitors in that it

10

enables the firm to complete trades expeditiously and in a highly professional manner. This information constitutes valuable trade secrets of E&A.

46.    The misappropriation of such trade secrets by a competitor would be extremely injurious to E&A, as it essentially provides a roadmap to a substantial part of E&A's business.

47.    E&A protects these trade secrets from public disclosure and maintains their secrecy in several ways. For example, all E&A employees are instructed that documents, business practices, and information generated, followed, and/or gathered by the firm is highly confidential and may not be disclosed outside the office and to non-E&A personnel. E&A's proprietary documents and other information are maintained in electronic form, and access to all computers within E&A's office is password protected, so that unauthorized persons are barred from reviewing such material. Indeed, some of the more highly sensitive information to which Zappier was given access is maintained by E&A on a separate computer drive, to which only certain E&A personnel have access.

48.    Zappier, in violation of his express contractual obligations, and in flagrant breach of trust, misappropriated E&A's trade secrets by, *inter alia*, incorporating crucial and highly proprietary elements of the MATTERS program into the ATS Software.

49.    The production, marketing, and distribution of the ATS Software by Zappier and ATS have caused, and continues to cause, grievous injury to E&A.

## CLAIM V

(Unfair Competition Against Zappier and ATS)

50.    Plaintiff repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

11

51.     Upon information and believe, while he was still employed by E&A, Zappier planned to steal the firm's intellectual property and trade secrets for his own use.

52.     Upon information and belief, Zappier organized ATS while he was still employed by E&A for the specific purpose of producing, marketing, and distributing the ATS Software, in direct competition with E&A's business.

53.     Upon information and belief, Zappier did in fact misappropriate crucial elements of the MATTERS program for inclusion in the ATS Software, and has produced, marketed, and distributed the ATS Software in competition with E&A's business.  Indeed, upon further information and belief, while working for E&A, Zappier approached a major client of the firm in order to market the ATS Software in direct competition with E&A's business.

54.     Either purposefully or as a consequence of Zappier's extended relationship with E&A, Zappier and ATS may have created a misimpression in the market for distressed debt that Zappier and ATS produced the ATS Software in cooperation with E&A.

55.     This consumer confusion would unjustly enrich Zappier and ATS by allowing them to trade off of E&A's premier industry reputation.  It would simultaneously undermine E&A's relationships with clients and prospective clients.

56.     The misappropriation of E&A's trade secrets and business reputation by Zappier and ATS constitutes unfair competition in violation of law.

57.     E&A hereby respectfully demands a trial by jury.

12

## PRAYER FOR RELIEF

WHEREFORE, E&A seeks judgment against Zappier and ATS as follows:

57.    On Claim I against Zappier and ATS, E&A seeks:

(a)    a judicial declaration that Zappier and ATS have infringed E&A's copyright in the MATTERS program;

(b)    a preliminary and permanent injunction barring the continued infringement of the MATTERS copyright by Zappier and ATS;

(c)    compensatory damages to be determined at trial;

(d)    costs and reasonable attorneys fees as permitted by statute; and

(e)    such other and further relief as the Court deems just and proper.

58.    On Claim II against Zappier, E&A seeks:

(a)    pursuant to the parties' agreement, a preliminary and permanent injunction barring the continued disclosure of E&A's confidential and proprietary information;

(b)    pursuant to the parties' agreement, liquidated damages in the amount of $25,000.00;

(c)    additional compensatory damages to be determined at trial;

(d)    pursuant to the parties' agreement, costs and attorneys fees; and

(e)    such other and further relief as the Court deems just and proper.

59.    On Claim III against Zappier, E&A seeks:

(a)    a preliminary and permanent injunction barring the continued breach of confidence and trust by Zappier;

(b)    compensatory damages to be determined at trial;

(c)    punitive damages of no less than $1,000,000.00; and

13

      (d)    such other and further relief as the Court deems just and proper.

60.    On Claim IV against Zappier and ATS, E&A seeks:

      (a)    a preliminary and permanent injunction barring the continued misappropriation of trade secrets by Zappier and ATS;

      (b)    compensatory damages to be determined at trial;

      (c)    punitive damages of no less than $1,000,000.00; and

      (d)    such other and further relief as the Court deems just and proper.

61.    On Claim V against Zappier and ATS, E&A seeks:

      (a)    a preliminary and permanent injunction barring the continued unfair competition by Zappier and ATS;

      (b)    compensatory damages to be determined at trial;

      (c)    punitive damages of no less than $1,000,000.00; and

      (d)    such other and further relief as the Court deems just and proper.

Date:  January 11, 2008        By:

                          DANIEL S. ALTER, ESQ.  (DA-7158)
                          ALTER & ALTER, LLP
                          300 East 42nd Street, 10th Floor
                          New York, NY 10017
                          (212) 867-7777
                          *Attorneys for Plaintiff*

Exhibit A

AGREEMENT made as of January 2004 by and between Esbin & Alter, LLP, a limited liability partnership organized under and existing by virtue of the laws of the State of New York, and having an office and place of business at 497 South Main Street, New City, New York 10956 (hereinafter "Firm"), and Paul Zappier, an individual residing at 11 Kings Drive, Middletown, New York 10941 (hereinafter "Consultant").

### WITNESSETH

WHEREAS, Firm is a law firm and utilizes a custom business application developed in Microsoft® Access 2003® know as Matters for tracking of trades, organizing trade documents, billing and other firm operations;

WHEREAS, Consultant specializes in custom automated business solutions and database application programming;

WHEREAS, Firm has retained Consultant to work with employees of Firm to further implement the Matters application and to implement additional functions for the application; and,

WHEREAS, prior to working for Firm, Consultant used Consultant's own predecessor version ("Predecessor Version") of Matters for other companies.

NOW, THEREFORE, intending to be legally bound, the Parties hereby agree as follows:

1.     As of July 2005, for a term ending on August 31, 2007, Consultant will work three days a week (8 hours per day) in Firm's office and four hours a week off premises as an independent consultant to work with employees of Firm under the direction, supervision and dominant control of the Firm to further implement the Matters software and to implement additional functions for the program (hereinafter "The Works"). For purposes of this agreement all improvements and additions of any kind developed and implemented specifically for the firm after January 2004 are deemed to be part of The Works and the Parties intend that the Firm obtain, to the extent permitted by law, exclusive rights to and complete control of all trade secrets related to the firm's business and other similar rights in and to The Works and all

Execution: August 15, 2007

intermediate versions thereof. Included among the improvements and additions to the Works, developed specifically for the Firm, after January 2004 and which are deemed part of The Works, but not constituting all the improvements and additions, are the Firm's version of the billing system, Invoice creator, tracking of trades and trade status, time log tracking, administrative functions, attendance functions, document management system and integration with Microsoft® Outlook program.

2.    Consultant hereby assigns grants and conveys to Firm his entire right, title and interest in and to Firm's version of The Works, including, but not limited to, the exclusive right to use the Works, the exclusive right to reproduce The Works, the exclusive right to prepare derivative works and the exclusive right to distribute copies of The Works. In the event, the Firm uses The Works for purposes other than in the ordinary course of its business, Firm will pay to Consultant an agreed percentage of any revenue generated for The Works.

3.    The consideration for the services and assignment provided pursuant to Paragraphs 1 and 2 herein was $1,800 per month for January 2004 – June 2005 as set forth in a separate Agreement entered into by and between the Parties and for July 2005 – August 2007 Firm has and will pay Consultant $2,000 per week, and other good and valuable consideration, and Consultant hereby expressly acknowledges receipt of said consideration.

4.    Consultant will not himself use the Firm's version of The Works for any purpose in any manner that is in business competition with Firm.

5.    Consultant hereby represents and warrants that the Firm's version of The Works will be free of the claims of any prior company in connection with which Consultant used any portion of the Matters program.

6.    This Agreement may be renewed on monthly terms by mutual agreement of the Parties and on the same terms set forth herein

7.    Consultant shall promptly disclose, maintain written records of and assign to the Firm all rights, title and interest of Consultant in and to any Works and Inventions made during and under the terms of this Agreement, regarding the Firms version of The Works.

8.    Consultant will give to the Firm all of the written information, copies, reports, papers, surveys, letters, drawings, computer printouts, source code, object code and

Execution: August 15, 2007

software and all other documents and things, relating or pertaining to the firms version of the Works, upon the request of the Firm.

9.      Any Technology or Information (hereinafter Confidential Materials) made available hereunder by Firm to Consultant and marked CONFIDENTIAL shall be kept confidential by Consultant and, without the prior written consent of the Firm, shall not be divulged to others. Consultant will not use such Confidential Materials for his own purposes and will use such Confidential Materials only pursuant to this Agreement. Upon termination of this Agreement, the Consultant will return all written copies of the Confidential Materials to the Firm and will not use any such Confidential Materials for any purpose. The Consultant agrees to hold in confidence forever and in perpetuity all such Confidential Materials disclosed to the Consultant by Firm even after the date of termination of employment, except: (a) Information which, at the time of disclosure, is in the public domain or which, after disclosure, becomes part of the public domain by publication or otherwise through no action or fault of the Consultant; or (b) Information which the Consultant can show was in his possession prior to the time of disclosure and was not acquired, directly or indirectly, from Firm (in which event the burden of proving same shall be on the Consultant); or (c) Information which was received by the Consultant from a third party having the legal right to transmit the same

10.     In the event (a) the Parties violate this Agreement and wrongfully disclose or utilize the Confidential Materials, or (b) the Consultant discloses or utilizes the Firm's version of the Works or Inventions, other than described in this agreement, the Parties with respect to subsection (a) consent to an immediate injunction in a court of competent jurisdiction and agrees to pay liquidated damages in the amount of $25,000 and any other provable damages the Parties have incurred, plus costs and attorneys fees, or in the event of the and with respect to (b) The Consultant consents to an immediate injunction in a court of competent jurisdiction and agrees to pay liquidated damages in the amount of $25,000 and any other provable damages the Firm  incurred, plus costs and attorneys fees.

11.     Consultant agrees not to engage in outside consulting or employment of any kind that conflicts or interferes in any way with the consulting to be performed for the Firm, or

Execution: August 15, 2007

engage in outside consulting or employment with a competitor of the Firm, without
express written permission of the Firm for the period of this contract.

12.        In the performance under this Agreement, Consultant will not develop any work
product for the Firm or perform any act or recommend any action to be taken by the Firm
which Consultant knows or should have known will infringe any intellectual property
right of Consultant or of any third party. If Consultant knowingly incorporates any work
which will infringe on Consultant's intellectual property, then, in addition to all other
remedies which may be available to the Firm, the Firm shall automatically have and
Consultant hereby grants to the Firm, a royalty free, perpetual, exclusive license
throughout the world to make, use, reproduce, distribute, prepare derivative works from
and in all other respects enjoy all of said proprietary right or rights thereunder as if it were
the full owner thereof, and to grant sublicenses with respect to said proprietary right or
rights to third parties without any requirement to account to Consultant therefore by way of
payment of royalty or otherwise.

13.        Any waiver by The Firm or a breach of any term or condition of this agreement shall
not be considered as a waiver of any subsequent breach of the same or any other term or
condition hereof.

14.        If any provision of this agreement is declared invalid, void or unenforceable by any
judicial or administrative authority, this will not in and of itself nullify the remaining
provisions of this agreement.

15.        This agreement sets forth the entire agreement and understanding between the parties
and merges and replaces all prior discussions, memoranda and agreements between them,
and neither party shall be bound by any conditions, definitions, warranties or
representations, other than as expressly provided for in this agreement or as set forth in a
written modification of this agreement signed by all parties to be bound.

Execution: August 15, 2007

16.     This agreement shall be deemed to have been made in the State of New York, and the
        Courts of the State of New York shall have exclusive jurisdiction with regard to any
        disputes concerning this agreement, and same shall be interpreted in accordance with the
        laws of the State of New York.


        IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates indicated
beside their respective signatures.

*Consultant:*                                    *For the Firm Esbin & Alter, LLP*:

Paul Zappier
Dated:  8/15/07

Ilyssa R. Alter, Partner
Dated:  A~  15, 2007

Execution: August 15, 2007

**Exhibit B**

**LILLING & LILLING, PLLC**
Patent & Trademark Law

55 Church St.
Suite 207
White Plains, NY 10601

Tel: (914) 684-0600
Fax: (914) 684-0304
www.Lilling.com
E-Mail: Bruce@Lilling.com
Scan@Lilling.com

October 29, 2007

COPY VIA CERTRIFIED MAIL AND VIA E MAIL pzappier@hve.rr.com
Paul Zappier
Advanced Trade Settlement, LLC
11 Kings Drive,
Middletown, New York 10941

Re:    Esbin & Alter, LLP
       Our file 389.0003

Dear Mr. Zappier,

We are writing on behalf of our clients Esbin & Alter, LLP, and we understand that they are well known to you. Reference is made to the Agreement between you and them, which was executed by you and Ilyssa Alter, on behalf of our client, on August 15, 2007.

**You have breached material provisions of that contract, have infringed their copyright and engaged in unfair competition.** Our firm has been retained as litigation counsel and it is important that your attorney contact me immediately if you want to have any possibility of avoiding litigation.

Pursuant to the agreement, since January 2004 you were retained to work with employees of our client to further implement its Matters application and to implement additional functions for the application. Paragraph 2 confirms that you assigned to our client your "entire right, title and interest in and to The Firms' version of The Works, including, but not limited to, the exclusive right to use the Works, the exclusive right to reproduce The Works, the exclusive right to prepare derivative works and the exclusive right to distribute copies of The Works."

These enumerated exclusive rights are the statutory ones mentioned in Section 106 of the Copyright law and Section 201 provides that "Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title."

Therefore, there is no issue about ownership of the Matters program (referred to as The Works in the agreement) and its copyright. It is owned by our client. You have no rights therein and specifically assigned all the exclusive rights to our client.

**LILLING & LILLING, PLLC**

Moreover, pursuant to Paragraph 4, you agreed that you will not "use the Firm's version of The Works for any purpose in any manner that is in business competition with Firm."

Nonetheless, you have used the Matters for your own purposes and in business competition with and to the detriment of our client.

On October 17, 2007 at the LSTA Trade Show in New York City, you exhibited a computer program with the same features and functions as the Matters program. This not only constitutes a violation of the agreement, but is also an infringement of our client's rights in this computer program and its copyright. Obviously you had access to our client's program as you worked on it for them pursuant to the agreement. Since your own program has the same functions, it is logical to assume that you impermissibly copied large portions of the program. Based on the functions of the program you exhibited at LSTA, it is apparent that you copied most, if not all, of the essential functional elements that were incorporated into the Matters program.

Your duplicity and double dealing are self apparent. During the summer, you continued to work with our client and continued to learn from them, but at the same time you apparently secretly took steps to go into competition with them. We notice your company was formed on July 20, 2007, while you were still actively engaged with our client on this program. You have breached your fiduciary obligations owed to our client.

There is also an apparent attempt to trade on our client's good will and reputation. We are advised that several large institutions represented at the trade show had the impression you were affiliated with our client and that your product was approved and/or supported by our client. You are using our client's own product to unfairly compete against them in the market. Further, these actions, if continued, may damage our client's reputation and have the possibility of causing some clients of our client to discontinue using them for some or all of their work. This would cause sever economic damage to our client.



**LILLING & LILLING, PLLC**

We demand that you discontinue all sales of your competitive program and also demand that you also totally discontinue work on any program that would be competition with our client. Due to your bad faith and surreptitious behavior, we demand an accounting for all monies you have received this calendar year. At the same due to the copyright infringement and breach of contract, you must repay to our client all monies paid to you since 2004. You also must identify every person who has purchased this program from you and every person who you have solicited.

Most importantly, you have contractually agreed to issuance of an injunction and payment of liquidated damages of $25,000 in addition to any other legal remedies that our client has, including provable damages, costs and attorneys' fees.

This matter is very serious and we are working on a Complaint. Your lawyer needs to contact me immediately if you want to have any hope of avoiding litigation.

Very truly yours,
Lilling & Lilling, PLLC

Bruce E. Lilling
Cc:    Esbin & Alter, LLP

**Exhibit C**



THE
BOYD
LAW
GROUP,
PLLC

PATRICK JAMES BOYD, ESQ.
*PARTNER*

NEW YORK OFFICE:                      WHITE PLAINS OFFICE:
230 PARK AVENUE                       50 MAIN STREET
SUITE 1000                            SUITE 1000
NEW YORK, NY 10169                    WHITE PLAINS, NY 10606
TEL: (212) 808-3054                   (BY APPOINTMENT ONLY)
FAX: (212) 808-3020

EMAIL: pboyd@theboydlawgroup.com

November 13, 2007

**VIA ELECTRONIC AND REGULAR MAIL**
Bruce Lilling
Lilling & Lilling, PLLC
55 Church Street, Suite 207
White Plains, New York 10601

Mr. Lilling:

We write on behalf of our client, Paul Zappier (hereinafter "Mr. Zappier" or "our client"). We ask that you direct any future communications regarding Mr. Zappier to our attention.

As you know, we are in receipt of the letter dated October 29, 2007 regarding Esbin & Alter, LLP (hereinafter "E&A" or the "Firm"). At this point we have concluded that the issues you have raised, as vague and numerous as they are, are based upon either an incorrect version of the facts, or an insufficient investigation into the matter on your part. Considering the serious nature of some of your allegations, it would be more appropriate for both you and your clients E&A to exercise more prudence in these matters. We expect further exchanges from your offices will better reflect a more sophisticated temperament.

We do not believe it is necessary or appropriate here for us to engage in a factual or legal dispute regarding each and every statement contained in your letter. Litigation will allow for a comprehensive analysis. We hope, however, that the brief explanation that we have chosen to provide below will help to elucidate the situation and our position to you.

Put simply, the differences between the Matters program – or E&A's version of it -- and the computer application at issue (hereinafter "ATS"), are obvious and clear. The Matters program is a simple desktop application that helps with time billing, invoicing, and client-matter organizing. E&A's version of the Matters application, moreover, has been totally customized to serve the Firm's specific method of operations. ATS, on the other hand, is a complex, full service application designed for an Enterprise environment.

There are numerous practical facts that highlight this essential difference of function. ATS, for example, can be accessed by multiple clients concurrently from anywhere in the world while the Matters program cannot. ATS, in fact, permits the generation and circulation of drafts and electronic execution of loan settlement documents that the Matters program cannot even

create. In terms of target user, the Matters program is intended for use in law firms as an internal client data management tool. ATS is intended for use by financial institutions, law firms, and brokerage houses among others to streamline and facilitate the loan settlement process itself. There is, moreover, not one element of the source code in ATS that was copied or borrowed from the source code of the Matters program. Fundamental differences in operating platform and scope alone should be more than enough to establish that ATS is a completely original creation completely unrelated to the Matters program. See e.g., O-Co Industries, Inc. v. Hoffman et al., 625 F.Supp.608 (S.D.N.Y. 1985).

We also note that, regardless of the validity of the August 15, 2007 agreement between our client and the Firm, you have misstated the subject matter of that agreement. The Works, as referred to in the agreement, pertains only to E&A's version of the Matters program as developed and implemented specifically for the firm after January 2004. As a result, even under the contract E&A cannot claim ownership of the Matters application in general, the core of which is wholly owned by a different party.

We would like to note in closing that E&A may have harmed our client by making false statements and remarks that are detrimental to Mr. Zappier's business interests. We will pursue all claims arising from such conduct vigorously should it become necessary, including but not limited to filing claims for tortious interference with a contract and defamation.

Please feel free to contact me if you have any questions.

Sincerely,

THE BOYD LAW GROUP, PLLC

Patrick J. Boyd

2

**Exhibit D**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## TXu 1-570-137

**Effective date of
registration:**

October 29, 2007

## Title

**Title of Work:** Matters

## Completion/Publication

**Year of Completion:** 2007

## Author

**Author:** Paul Zappier

**Author Created:** computer program

**Work made for hire:** No

**Anonymous:** No                          **Pseudonymous:** No

**Author:** Esbin & Alter, LLP

**Author Created:** computer program

**Work made for hire:** Yes

**Anonymous:** No                          **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Esbin & Alter, LLP

497 South Main Street, New City, NY, 10956

**Transfer Statement:** Esbin & Alter, LLP obtained assignment from Paul Zappier

## Limitation of copyright claim

**Previously registered:** No

## Certification

**Name:** Scott Esbin

**Date:** October 19, 2007

IPN#:

Registration #:

*TXU001570137*

Service Request #:  1-26007513

Bruce E. Lilling
55 Church Street
White Plains, NY 10601