**ALTER & ALTER**
COUNSELORS AT LAW
300 EAST 42 STREET
TENTH FLOOR
NEW YORK, NEW YORK 10017
212-867-7777

STANLEY ALTER
STEPHANIE S. ALTER
IVAN S. ALTER

June 18, 2008

*By Overnight Courier*

Hon. Mark D. Fox
United States Magistrate Judge
United States Courthouse, Room 434
300 Quarropas Street
White Plains, NY 10601

    Re: *Esbin & Alter LLP v. Zappier, et al.*, 08 Civ. 313 (SCR) (MDF)

Dear Judge Fox:

    Pursuant to the Court's standing Order for the resolution of discovery disputes, dated January 7, 2007, plaintiff Esbin & Alter LLP ("E&A") respectfully requests that Your Honor direct defendants Paul Zappier and Advanced Trade Settlement, LLC (collectively "defendants") to produce all documents responsive to Request 15 of Plaintiff's First Document Request ("Request 15"). Counsel for the parties have conferred both in writing and by telephone, and have been unable to resolve this dispute.

    Request 15 seeks:

> All documents describing, embodying, establishing, and/or identifying the business relationships between Zappier and/or ATS and Sabharwal, Globus, and Lim, LLP; Mandel, Katz, Manna, and Brosman LLP; Kiesetstein & Lee LLP, and RAD Technologies, Inc., as identified in paragraphs 4 and 6 of the Affidavit of Paul Zappier, dated February 4, 2008, submitted by defendants in this action in opposition to plaintiff's motion for expedited discovery.

    Defendants objected to Request 15 on the grounds that it is allegedly vague, overbroad, irrelevant, and not calculated to lead to discovery of admissible evidence. Defendants' objections are baseless.

E&A is a law firm specializing in securities and debt transactions, and its complaint in this action alleges that defendants infringed E&A's copyrighted computer program, misappropriated trade secrets, breached the parties' confidentiality/non-disclosure agreement, breached fiduciary obligations, and committed unfair competition. Indeed, paragraph 11 of the parties' confidentiality/non-disclosure agreement (annexed as Exhibit A) expressly prohibited defendant Zappier from "engage[ing] in outside consulting or employment with a competitor of [E&A], without express permission of [E&A] for the period of this contract." Nevertheless, defendant Zappier stated in paragraphs 4 and 6 of his affidavit, dated February 4, 2008(annexed as Exhibit B), that he worked for several law firms that compete with E&A for business and customized computer software for them as he had done for E&A.

Consequently, the documents sought by Request 15 are directly relevant to, and probative of, whether defendants breached the parties' confidentiality/non-disclosure agreement and also misappropriated E&A's proprietary information and trade secrets in violation of several legal doctrines. The following questions flow directly from Zappier's affidavit: When did defendant Zappier customize programs for these programs? Did he incorporate any of the work that he performed for E&A in the work that he performed for them? In short, Request 15 seeks materials that relate directly to defendants' liability and should be immediately produced by defendants.

Respectfully submitted,

Daniel S. Alter, Esq.
*Counsel for Plaintiff*

Cc:   Patrick Boyd, Esq.
      *By E-Filing and Regular Mail*

# EXHIBIT A

AGREEMENT made as of January 2004 by and between Esbin & Alter, LLP, a limited liability partnership organized under and existing by virtue of the laws of the State of New York, and having an office and place of business at 497 South Main Street, New City, New York 10956 (hereinafter "Firm"), and Paul Zappier, an individual residing at 11 Kings Drive, Middletown, New York 10941 (hereinafter "Consultant").

WITNESSETH

WHEREAS, Firm is a law firm and utilizes a custom business application developed in Microsoft® Access 2003® know as Matters for tracking of trades, organizing trade documents, billing and other firm operations;

WHEREAS, Consultant specializes in custom automated business solutions and database application programming;

WHEREAS, Firm has retained Consultant to work with employees of Firm to further implement the Matters application and to implement additional functions for the application; and,

WHEREAS, prior to working for Firm, Consultant used Consultant's own predecessor version ("Predecessor Version") of Matters for other companies.

NOW, THEREFORE, intending to be legally bound, the Parties hereby agree as follows:

1. As of July 2005, for a term ending on August 31, 2007, Consultant will work three days a week (8 hours per day) in Firm's office and four hours a week off premises as an independent consultant to work with employees of Firm under the direction, supervision and dominant control of the Firm to further implement the Matters software and to implement additional functions for the program (hereinafter "The Works"). For purposes of this agreement all improvements and additions of any kind developed and implemented specifically for the firm after January 2004 are deemed to be part of The Works and the Parties intend that the Firm obtain, to the extent permitted by law, exclusive rights to and complete control of all trade secrets related to the firm's business and other similar rights in and to The Works and all

Execution: August 15, 2007

intermediate versions thereof. Included among the improvements and additions to the Works, developed specifically for the Firm, after January 2004 and which are deemed part of The Works, but not constituting all the improvements and additions, are the Firm's version of the billing system, Invoice creator, tracking of trades and trade status, time log tracking, administrative functions, attendance functions, document management system and integration with Microsoft® Outlook program.

2. Consultant hereby assigns grants and conveys to Firm his entire right, title and interest in and to Firm's version of The Works, including, but not limited to, the exclusive right to use the Works, the exclusive right to reproduce The Works, the exclusive right to prepare derivative works and the exclusive right to distribute copies of The Works. In the event, the Firm uses The Works for purposes other than in the ordinary course of its business, Firm will pay to Consultant an agreed percentage of any revenue generated for The Works.

3. The consideration for the services and assignment provided pursuant to Paragraphs 1 and 2 herein was $1,800 per month for January 2004 – June 2005 as set forth in a separate Agreement entered into by and between the Parties and for July 2005 – August 2007 Firm has and will pay Consultant $2,000 per week, and other good and valuable consideration, and Consultant hereby expressly acknowledges receipt of said consideration.

4. Consultant will not himself use the Firm's version of The Works for any purpose in any manner that is in business competition with Firm.

5. Consultant hereby represents and warrants that the Firm's version of The Works will be free of the claims of any prior company in connection with which Consultant used any portion of the Matters program.

6. This Agreement may be renewed on monthly terms by mutual agreement of the Parties and on the same terms set forth herein

7. Consultant shall promptly disclose, maintain written records of and assign to the Firm all rights, title and interest of Consultant in and to any Works and Inventions made during and under the terms of this Agreement, regarding the Firms version of The Works.

8. Consultant will give to the Firm all of the written information, copies, reports, papers, surveys, letters, drawings, computer printouts, source code, object code and

Execution: August 15, 2007

software and all other documents and things, relating or pertaining to the firms version of the Works, upon the request of the Firm.

9. Any Technology or Information (hereinafter Confidential Materials) made available hereunder by Firm to Consultant and marked CONFIDENTIAL shall be kept confidential by Consultant and, without the prior written consent of the Firm, shall not be divulged to others. Consultant will not use such Confidential Materials for his own purposes and will use such Confidential Materials only pursuant to this Agreement. Upon termination of this Agreement, the Consultant will return all written copies of the Confidential Materials to the Firm and will not use any such Confidential Materials for any purpose. The Consultant agrees to hold in confidence forever and in perpetuity all such Confidential Materials disclosed to the Consultant by Firm even after the date of termination of employment, except: (a) Information which, at the time of disclosure, is in the public domain or which, after disclosure, becomes part of the public domain by publication or otherwise through no action or fault of the Consultant; or (b) Information which the Consultant can show was in his possession prior to the time of disclosure and was not acquired, directly or indirectly, from Firm (in which event the burden of proving same shall be on the Consultant); or (c) Information which was received by the Consultant from a third party having the legal right to transmit the same

10. In the event (a) the Parties violate this Agreement and wrongfully disclose or utilize the Confidential Materials, or (b) the Consultant discloses or utilizes the Firm's version of the Works or Inventions, other than described in this agreement, the Parties with respect to subsection (a) consent to an immediate injunction in a court of competent jurisdiction and agrees to pay liquidated damages in the amount of $25,000 and any other provable damages the Parties have incurred, plus costs and attorneys fees, or in the event of the and with respect to (b) The Consultant consents to an immediate injunction in a court of competent jurisdiction and agrees to pay liquidated damages in the amount of $25,000 and any other provable damages the Firm incurred, plus costs and attorneys fees.

11. Consultant agrees not to engage in outside consulting or employment of any kind that conflicts or interferes in any way with the consulting to be performed for the Firm, or

Execution: August 15, 2007

engage in outside consulting or employment with a competitor of the Firm, without express written permission of the Firm for the period of this contract.

12. In the performance under this Agreement, Consultant will not develop any work product for the Firm or perform any act or recommend any action to be taken by the Firm which Consultant knows or should have known will infringe any intellectual property right of Consultant or of any third party. If Consultant knowingly incorporates any work which will infringe on Consultant's intellectual property, then, in addition to all other remedies which may be available to the Firm, the Firm shall automatically have and Consultant hereby grants to the Firm, a royalty free, perpetual, exclusive license throughout the world to make, use, reproduce, distribute, prepare derivative works from and in all other respects enjoy all of said proprietary right or rights thereunder as if it were the full owner thereof, and to grant sublicenses with respect to said proprietary right or rights to third parties without any requirement to account to Consultant therefore byway of payment of royalty or otherwise.

13. Any waiver by The Firm or a breach of any term or condition of this agreement shall not be considered as a waiver of any subsequent breach of the same or any other term or condition hereof.

14. If any provision of this agreement is declared invalid, void or unenforceable by any judicial or administrative authority, this will not in and of itself nullify the remaining provisions of this agreement.

15. This agreement sets forth the entire agreement and understanding between the parties and merges and replaces all prior discussions, memoranda and agreements between them, and neither party shall be bound by any conditions, definitions, warranties or representations, other than as expressly provided for in this agreement or as set forth in a written modification of this agreement signed by all parties to be bound.

Execution: August 15, 2007

16. This agreement shall be deemed to have been made in the State of New York, and the Courts of the State of New York shall have exclusive jurisdiction with regard to any disputes concerning this agreement, and same shall be interpreted in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates indicated beside their respective signatures.

*Consultant:*

*[signature]*
Paul Zappier
Dated: 8/15/07

*For the Firm Esbin & Alter, LLP:*

*[signature]*
Ilyssa R. Alter, Partner
Dated: Aug 15, 2007

Execution: August 15, 2007

# EXHIBIT B

JUN.18.2008 7:12AM NO.197 P.10/12
Case 7:08-cv-00313-SCR-MDF   Document 26   Filed 06/18/2008   Page 10 of 12
Case 7:08-cv-00313-SCR-MDF   Document 14   Filed 02/21/2008   Page 4 of 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESBIN & ALTER, LLP,

              Plaintiff,              Civ. Action No.
                                      08 Civ. 0313

    -against-

                                      **AFFIDAVIT of**
PAUL ZAPPIER and ADVANCED TRADE      Paul Zappier
SETTLEMENT, LLC,

              Defendants.
------------------------------------------------------------X

STATE OF NEW YORK)
COUNTY OF NEW YORK) ss:

PAUL ZAPPIER, being duly sworn, deposes and says:

1. I am a named defendant in this action and the founder of Advanced Trade Settlement, LLC (hereinafter "ATS").

2. I make this Affidavit in opposition to Plaintiff's Request for an Order to Show Cause made pursuant to Rule 26(d) of the Federal Rules of Civil Procedure.

3. I founded Advance Trade Settlement, LLC on July 20th, 2007.

4. Prior to my involvement with ATS, I worked as a computer consultant specializing in customizing business management software for existing business operations, including law firms such as Plaintiff Esbin & Alter, LLP, Sabharwal, Globus and [...] LLP, Mandel, Katz, Manna and Brosnan LLP and Kieselstein & Lee LLP. Around January 2004, while working for RAD Technologies, I was retained as a consultant to customize the Matters program, a client-management software developed by RAD Technologies, Inc., to better suit the needs of Plaintiff Esbin & Alter.

JUN.18.2008 7:12AM NO.197 P.11/12
Case 7:08-cv-00313-SCR-MDF Document 26 Filed 06/18/2008 Page 11 of 12
Case 7:08-cv-00313-SCR-MDF Document 14 Filed 02/21/2008 Page 5 of 6

5. The Matters program is an independent program that has been utilized by numerous other businesses including at least three other law firms.

6. As a computer consultant, I have customized the Matters program for at least four of my clients. The clients include the law firms mentioned above in Paragraph No. 5.

7. The product that I create for each client is specifically tailored to the way each client organizes its business files and operates its business.

8. As such, Esbin & Alter does not own any of the rights to the Matters program itself. In fact, the way in which the program has been customized for use by Esbin & Alter would not be of utility to any other entity.

9. This understanding is reflected in the express language of the consultant agreement between myself and Esbin & Alter, attached hereto as Exhibit A.

10. I single-handedly and independently developed the ATS software at issue based on my knowledge of computer software programming and a general understanding of the debt-settlement industry's needs.

11. I did not develop the ATS software while working at Esbin & Alter.

12. I did not use Esbin & Alter's version of the Matters program or any of their resources in developing the ATS software, including any confidential information.

13. I created the source code for the ATS software entirely from scratch.

14. I did not borrow from either the Matters program or the Works program in designing and developing the ATS software.

15. I have been attempting to market the ATS software since, August 20th, 2007, but have not yet generated any business based on the software.

16. To my knowledge, however, Plaintiff Esbin & Alter has been talking to the

JUN.18.2008 7:12AM NO.197 P.12/12
Case 7:08-cv-00313-SCR-MDF Document 26 Filed 06/18/2008 Page 12 of 12
Case 7:08-cv-00313-SCR-MDF Document 14 Filed 02/29/2008 Page 6 of 6

prospective clients for ATS, stating among other things that they own the rights to ATS software.

17. For instance, JP Morgan, a prospective client, communicated that they would not further pursue business with ATS regarding its software. Upon information and belief, they made this decision because of what they were told by Esbin & Alter.

18. Esbin & Alter's conduct has caused damage to ATS' business prospects and reputation, creating a cause of action that I wish to pursue in this case.

Dated: February 4, 2008
New York, New York

By: _____
Paul Zappier

Sworn to before me this
____ day of February, 2008

_____
Notary Public

CANDACE A. BEHENSKY
Notary Public, State of New York
No. 01BE6025493
Qualified in Orange County
Commission Expires May 24, 2011